IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHAUNTAE TAYLOR,

        Plaintiff,                       No. CIV S-10-2731 GGH P

   vs.

T. VIRGA, et al.,

        Defendants.              ORDER

_____/

       Plaintiff is a state prisoner proceeding pro se. He seeks relief pursuant to 42 U.S.C. § 1983 and has requested authority pursuant to 28 U.S.C. § 1915 to proceed in forma pauperis. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

       Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis will be granted.

       Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). An initial partial filing fee of $18.72 will be assessed by this order. 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the

preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

A complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure 1216, pp. 235-235 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, No. 07-1015, 2009 WL 1361536 at * 12 (May 18, 2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content

/////

2

1  that allows the court to draw the reasonable inference that the defendant is liable for the
2  misconduct alleged." Id.
3  In reviewing a complaint under this standard, the court must accept as true the
4  allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S.
5  738, 740, 96 S.Ct. 1848 (1976), construe the pleading in the light most favorable to the plaintiff,
6  and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct.
7  1843 (1969).
8  Plaintiff, in a deficiently organized filing of some 134 pages (primarily exhibits),
9  names the following, all employed at Folsom State Prison (FSP), as defendants: Associate
10 Warden T. Virga; Appeals Coordinators A. Pereiara and K.A. Daly; Correctional (Corr.)
11 Lieutenant Conrad; Psychologist Benzendine; Registered Nurse (RN) Chappell; Corr. Officer
12 (C/O) Brown; Corr. Counselor Guzman; Corr. Sergeant Wolff. Complaint, pp. 2-3, 5-6.[1]
13 Plaintiff purports to sue for violations of his rights under the First, Eighth and Fourteenth
14 Amendments. Id., at 4.
15 Plaintiff begins by alleging that he was before the unit classification committee
16 (UCC) on June 9, 2010, July 13, 2010 "and different dates." Complaint, p. 9. Plaintiff identifies
17 by name only defendant Virga as a member of the UCC before which plaintiff presented. Id. He
18 claims that all members present were listening when he stated that he was "very paranoid" about
19 taking a cellmate due to his "extreme paranoia" that he, plaintiff, would seriously or fatally harm
20 a cellmate, further informing them that at California State Prison at Lancaster (CSP-LAC)
21 plaintiff was on single cell status in the S.O.P. mental health program, adding "he was double
22 cell approved against my will." Id. He stated that he went to Administrative Segregation (Ad
23 Seg) at CSP-LAC due to "the poor decision" by certain CSP-LAC officials (individuals
24 \\\\\

---

26  [1] The undersigned references the court's electronic pagination only.

3

apparently not relevant to this action).[2] Id. Plaintiff alleges that FSP administration officials were aware of his requests and fears about harming a cellmate by way of unanswered 602 appeals. Id. Plaintiff claims that defendant Virga "totally ignored my verbal warning" at the June 9th, 2010 UCC meeting stating: "'Well, Mr. Taylor, that's your decision. That's your choice, and you will be the one who answers to that. In order to go to S.N.Y.[3], you have to take a cellmate.'" Id.

Once classified as SNY/protective custody status by the UCC, plaintiff apparently repeated that he was paranoid about seriously hurting or killing a cellmate at another UCC appearance, but he nevertheless took a cellmate under duress because he was told he would remain in Ad Seg if he did not. Complaint, p. 10. Plaintiff goes on to state that a lieutenant at CSP-LAC had placed him on single cell status when he had given his "verbal warning" of his fears concerning a cellmate and extrapolates from that that other CSP-LAC officials and defendant Virga and the unnamed UCC members at FSP were deliberately indifferent to both his safety and that of his cellmate by placing him with a cellmate. Id. Plaintiff alleges that the defendants ignored his verbal warnings completely and that defendants Pereiara and Daly obstructed and impeded his right of access to the courts by "spitefully" returning plaintiff's appeals with appeal screening forms. Id. Plaintiff claims that when he would comply with whatever request was made on the form, the appeals were either not answered or returned again with another screening form. Id. Plaintiff also contends that the appeals coordinators also violated "time restraints" on the appeals constantly. Id. at 11.

Plaintiff alleges that on August 1, 2010, he was involved in a serious cellfight with his cellmate, Inmate Miller, CDC # K-61169. Complaint, p. 11. Plaintiff received cuts

---

[2] Plaintiff adds parenthetically that he was removed from single-cell status at CSP-LAC as a form of "retaliation for the litigation of my appeal rights." Id.

[3] Plaintiff shows a propensity for using acronyms without first spelling what the initials stand for. In this instance, the undersigned believes that S.N.Y stands for "sensitive needs yard."

4

around his eyes and his left jaw "looked to be broken"; the doctor who saw him recommended an x-ray of his face. Id.  Plaintiff states that defendants Conrad and Benzedine interfered with his medical treatment but does not clarify how. Id.  Plaintiff expresses his indignation about being sent to a suicide holding cell while his cellmate, who only had a cut to his finger, was allowed to return to "his normal general population housing." Id.  Plaintiff claims that was both a failure to protect and an "extreme form" of retaliation for his litigation. Id.  Plaintiff was told there was no room in Ad Seg and "'you made mention of homicide on your celly, so that's the reason.'" Id. Plaintiff alleges that defendant Conrad allowed him to be assaulted and then sent him to Ad Seg. Id.  Plaintiff states that once he realized he was going to go to Ad Seg (which confusingly he implicitly appears to have earlier preferred to a suicide holding cell and which he later equates to being the same place), "he began to express the altercation as a minor disag[]reement" and asked that he and Inmate Miller be returned to the yard, after which defendant Conrad and his unnamed subordinates permitted them to sign a yard agreement chrono.

Plaintiff includes a bit of dialogue that appears to be almost surreal. He complains that after both he and Inmate Miller signed the chrono, he was not switched right away, but was told by defendants Conrad and Benzendine that he would have to go to Ad Seg for a few days until someone left. Complaint, p. 12. Plaintiff asked: "'Why am I going to a suicide cell. I never said anything about being suicidal." Defendant Benzendine replied: "'Well, you did state something about homicide on your cellmate.'" Id. "I then corrected her," plaintiff states, "'I told you that I did good by not killing him, besides any other time I really have threatened a cellmate, no one ever cares, and even mocks me about it.'" Id.  If plaintiff's point is that somehow saying he did well by not killing his cellmate does not equate to threatening homicide, he fails to make it. Nor does his claim that his prior threats did not result in his being placed in Ad Seg earlier lend significant weight to his allegations. Plaintiff also states that his being placed in a suicide holding cell overnight on a Sunday, when he earlier stated that no x-ray was possible on a Sunday, also does not lend support to his claim that defendants Conrad and Benzedine were

trying to discourage him from receiving x-rays the following day. Id. at 11, 13. Plaintiff elsewhere indicates that he did receive x-rays on his face on August 2, 2010, which evidently was the day following the cellfight. Id. at 22.

Plaintiff also claims that defendant Chappell refused his pleas for an ice pack for his swelling face as he sat naked in a nylon suicide vest and walked away (along with unnamed officers denying his requests for medical help that night). Complaint, p. 13. Defendant Wolff joked about his face by saying "Damn who kicked his fuxxing [sic] ass?" Id. When plaintiff responded with "Don't ask any stupid questions," defendant Wolff grabbed plaintiff by the throat, pulling him out of the restroom area, pushing him back to the suicide cell. Plaintiff contends that the conduct of these defendants violated his Eighth Amendment rights, failing to protect him, denying him medical treatment, treating him brutally. Id., at 13-14.

Plaintiff was released from Ad Seg after the August 1st fight on August 13th, claiming that he once again took a cellmate under duress. Complaint, p. 14. On August 16th, plaintiff told defendant Brown that he and his roommate were "not getting along at all." Id. Defendant Brown told plaintiff "we are not regulars; we're not doing any moves," telling plaintiff to ask the tower officer. Id. When plaintiff continued to express how serious his need for a cell change was, defendant Brown and three officers whose name plaintiff does not know turned it into a laughing matter. Id., at 15. Plaintiff recounts that defendant Brown told him there was a vacant cell but that he would not want to go there because the inmate was white. Id. When plaintiff said that he did not care where he went as long as he got out of the cell he was in, the officers laughed and told plaintiff again they were not regular staff and not making moves. Id. Plaintiff yelled for the tower officer five or six times with no response. Id. Plaintiff told the officers of whom he knew only Brown's name he was writing them up. Id. Four hours later, his cellmate, Inmate Hernandez, CDC # P774484 got into a fight in the cell, resulting in Hernandez sustaining "a fractured orbit/eye socket, a broken nose, and needed stitches." Id. Hernandez's injuries were so severe that plaintiff is in Ad Seg on charges of battery on an inmate resulting in

6

serious injury with his prosecution by the district attorney pending on a new charge. Id. Plaintiff places the blame for all that occurred upon the UCC because defendant Virga and the other members failed to protect him or his cellmates even though he had warned them about his fear of his injuring or killing them. Id. He also alleges that defendant Brown is responsible. Id. at 15-16. He in addition places blame on officials at CSP-LAC, who are not named defendants in this action, as well as the FSP appeal coordinators defendants Pereiara and Daly. Id. at 17. Somewhat ironically, it appears that he is attempting to make claims on behalf of the inmates he has injured as well. Id. Plaintiff complains that he has been told that if he is found guilty of battery on an inmate with serious bodily injury he will be held in SHU[4] segregated housing until July of 2011. Id. He complains of the loss of privileges he has suffered as a result of his current Ad Seg placement. Id. at 17-18. He contends that defendants have caused him intense mental stress and anguish and depression. Id. at 18. He alleges he has been left with permanent scars and injuries to his face, evidently by the denial of medical treatment. Id. Plaintiff essentially repeats his claims for several pages. Id. at 19-28. Plaintiff seeks a permanent injunction requiring his placement on single cell status, as well as asking that his personal belongings be located (of which he is apparently deprived in his current housing). Id., at 28-29. He also seeks compensatory and punitive money damages. Id. at 30-31.

        The court has set forth plaintiff's complaints in exacting (not to say, excruciating, detail) in order to determine if plaintiff has framed any colorable claim. On the face of it, plaintiff may have a colorable claim as to some of the named defendants but in order to proceed plaintiff will have to amend his complaint. In the first place, plaintiff has violated Rule 8(a)(2) of the Federal Rules of Civil Procedure, failing to organize his allegations into a "short and plain statement of the claim." Furthermore, plaintiff's rights to due process are not implicated by his being placed with a cellmate. In general, prison officials' housing and classification decisions do

---

[4] Security Housing Unit.

not give rise to federal constitutional claims encompassed by the protection of liberty and property guaranteed by the Fifth and Fourteenth Amendments. See Board of Regents v. Roth, 408 U.S. 564, 569, 92 S. Ct. 2701 (1972). Nor does the Constitution guarantee a prisoner placement in a particular prison or protect an inmate against being transferred from one institution to another. Meachum v. Fano, 427 U.S. 215, 223-225, 96 S. Ct. 2532, 2538 (1976). By his own allegations, plaintiff appears to be highly manipulative, alleging he will harm or kill a cellmate if not single-celled, but when he does not like placement alone in Ad Seg, attempting to downplay the seriousness of any fight he has gotten into. Plaintiff's claims regarding being denied single cell status will be dismissed but plaintiff is granted leave to amend.

As to his claims that his grievances are not properly processed, prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Even the non-existence of, or the failure of prison officials to properly implement, an administrative appeals process within the prison system does not raise constitutional concerns. Mann v. Adams, 855 F.2d at 640. See also, Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Flick v. Alba, 932 F.2d 728 (8th Cir. 1991). Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D.Ill. 1982) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"). Specifically, a failure to process a grievance does not state a constitutional violation. Buckley, supra. State regulations give rise to a liberty interest protected by the Due Process Clause of the federal constitution only if those regulations pertain to "freedom from restraint" that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300 (1995).[5] Plaintiff's due process claims

---

[5] "[W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. See also Board of Pardons v. Allen, 482 U.S.

against defendants will be dismissed but plaintiff will be granted leave to amend.

To the extent that plaintiff seeks to allege that he has been denied adequate medical care in violation of the Eighth Amendment, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989). McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc). 1992).

In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court

---

369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, e.g., Vitek v. Jones, 445 U.S. 480, 493, 100 S.Ct.1254, 1263-1264 (transfer to mental hospital), and Washington[ v. Harper], 494 U.S. 210, 221- 222, 110 S.Ct. 1028, 1036-1037 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, supra.

defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference." Of course, negligence is insufficient. Farmer, 511 U.S. at 835, 114 S. Ct. at 1978. However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient. Id. at 836-37, 114 S. Ct. at 1979. Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk. Id. at 842, 114 S. Ct. at 1981.

It is nothing less than recklessness in the criminal sense – subjective standard – disregard of a risk of harm of which the actor is actually aware. Id. at 838-842, 114 S. Ct. at 1979-1981. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837, 114 S. Ct. at 1979. Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847, 114 S. Ct. at 1984. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842, 114 S. Ct. at 1981. If the risk was obvious, the trier of fact may infer that a defendant knew of the risk. Id. at 840-42, 114 S. Ct. at 1981. However, obviousness per se will not impart knowledge as a matter of law.

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

Moreover, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id.

Additionally, mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference. Shapley v. Nevada Bd. of State Prison Com'rs, 766

1  F.2d 404, 408 (9th Cir. 1985). Although the delay in medical treatment must be harmful, there is
2  no requirement that the delay cause "substantial" harm. McGuckin, 974 F.2d at 1060, citing
3  Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-
4  1000. A finding that an inmate was seriously harmed by the defendant's action or inaction tends
5  to provide additional support for a claim of deliberate indifference; however, it does not end the
6  inquiry. McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992). In summary, "the more serious the
7  medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those
8  needs, the more likely it is that a plaintiff has established deliberate indifference on the part of
9  the defendant." McGuckin, 974 F.2d at 1061.

10    Superimposed on these Eighth Amendment standards is the fact that in cases
11 involving complex medical issues where plaintiff contests the type of treatment he received,
12 expert opinion will almost always be necessary to establish the necessary level of deliberate
13 indifference. Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988). Thus, although there
14 may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the
15 treatment he received equated with deliberate indifference thereby creating a material issue of
16 fact, summary judgment should be entered for defendants. The dispositive question is ultimately
17 not what was the most appropriate course of treatment for plaintiff, but whether the failure to
18 timely give a certain type of treatment was, in essence, criminally reckless.

19    Plaintiff's claims that he was denied an ice pack for one night for a swelling face
20 (which he received from getting into a cell fight) does not appear to rise to the level of an Eighth
21 Amendment violation. Although plaintiff claims that he was not permitted immediate x-rays for
22 what he believed to be a broken jaw (from the same fight), he also states that he did receive x-
23 rays within a day of the first cellfight he describes. Plaintiff also fails to allege satisfactorily that
24 he, indeed, did suffer a broken jaw or other serious injury. Plaintiff's claims of inadequate
25 medical care will be dismissed with leave to amend.

26    Plaintiff claims that his being denied single cell status was both in retaliation for

1  his "litigation" and constituted a failure to protect. But on the face of it, as the court has noted,
2  plaintiff has essentially set forth how, when he wants a single cell, he maintains that he is afraid
3  he will attack and kill a cellmate, but when he doesn't like placement in Ad Seg, he claims a
4  cellfight in which he was involved was not particularly serious. In order to show retaliation for
5  filing a grievance, plaintiff must plead facts which suggest that retaliation for the exercise of
6  protected conduct was the "substantial" or "motivating" factor behind the defendant's conduct.
7  See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). The plaintiff must
8  also plead facts which suggest an absence of legitimate correctional goals for the conduct he
9  contends was retaliatory. Pratt at 806 (citing Rizzo at 532). Verbal harassment alone is
10 insufficient to state a claim. See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).
11 However, even threats of bodily injury are insufficient to state a claim, because a mere naked
12 threat is not the equivalent of doing the act itself. See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir.
13 1987). Mere conclusions of hypothetical retaliation will not suffice, a prisoner must "allege
14 specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."
15 Frazier v. Dubois, 922 F.2d 560, 562 (n. 1) (10th Cir. 1990).

16  This is not to say that a vexatious grievance filer can never be punished.
17 Vexatious litigants may be the subject of court discipline, and the undersigned would find it
18 incongruous that while the courts can punish vexatious filings, prison officials may not. Indeed,
19 the right to petition for grievances is not absolutely protected; such a right has no greater
20 protection than speech in general. Rendish v. City of Tacoma, 123 F.3d 1216 (9th Cir. 1997). In
21 the prison context, one's free speech rights are more constricted from what they would be on the
22 outside. O'Lone v. Estate of Shabazz, 482 U.S. 342, 107 S. Ct. 2400 (1987). Again, plaintiff
23 must show that the actions or omissions constituting the "retaliation" served no legitimate
24 penological goal. Plaintiff's claims of retaliation will be dismissed with leave to amend.

25  As to his claims that defendants have failed to protect him, "'prison officials have
26 a duty...to protect prisoners from violence at the hands of other prisoners.'" Farmer v. Brennan,

1  511 U.S. 825, 833, 114 S.Ct. 1970, 1976 (1994).  "[A] prison official violates the Eighth
2  Amendment when two requirements are met.  First, the deprivation alleged must be, objectively,
3  'sufficiently serious'....  For a claim (like the one here) based on a failure to prevent harm, the
4  inmate must show that he is incarcerated under conditions posing a substantial risk of serious
5  harm."  Id. at 834, 114 S.Ct. at 1977.  Second, "[t]o violate the Cruel and Unusual Punishments
6  Clause, a prison official must have a 'sufficiently culpable state of mind' ... [T]hat state of mind
7  is one of 'deliberate indifference' to inmate health or safety."  Id.  The prison official will be
8  liable only if "the official knows of and disregards an excessive risk to inmate health and safety;
9  the official must both be aware of facts from which the inference could be drawn that a
10 substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837, 114 S.Ct.
11 at 1979.  In this instance, the failure to protect appears to be a claim that could possibly be raised
12 by plaintiff's unfortunate cellmates, but not very convincingly by plaintiff.  Of course, plaintiff
13 cannot raise claims on behalf of any party other than himself.  Halet v. Wend Inv. Co., 672 F.2d
14 1305, 1308 (9th Cir. 1982) (party must assert [his] own rights not those of third parties), citing
15 Duke Power Co. v. Carolina Environmental Study Group, 438 U.S. 59, 80, 98 S.Ct. 2620, 2634
16 (1978); Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205 (1974).  Plaintiff's claims of a
17 failure to protect will be dismissed with leave to amend.

On November 9, 2010, plaintiff filed "a motion for permanent injunction."
Plaintiff's complaint is herein being dismissed with leave to amend.  Should plaintiff amend his complaint, the appropriate place to seek permanent injunctive relief is within his amended complaint as a form of relief he is seeking.  The court will vacate the pending motion as both premature and inapposite.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  Also, the complaint must allege in specific terms how each named defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless

there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee of $18.72. All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. The complaint is dismissed for the reasons discussed above, with leave to file an amended complaint within twenty-eight days from the date of service of this order. Failure to file an amended complaint will result in a recommendation that the action be dismissed.

4. Plaintiff's premature and inapposite motion for a permanent injunction, filed on November 9, 2010 (docket # 7), is vacated.

DATED: January 4, 2011

/s/ Gregory G. Hollows

_____
UNITED STATES MAGISTRATE JUDGE

GGH:009 - tayl2731.b