1

2

3

4

5

6

7              IN THE UNITED STATES DISTRICT COURT

8             FOR THE EASTERN DISTRICT OF CALIFORNIA

9    SHAUNTAE TAYLOR,

10           Plaintiff,                    No. CIV S-10-2731 WBS GGH P

11        vs.

12   T. VIRGA, et al.,

13           Defendants.               <u>FINDINGS AND RECOMMENDATIONS</u>

14   _____/

15           Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action

16   filed pursuant to 42 U.S.C. § 1983.  By order filed January 4, 2011, plaintiff's complaint was

17   dismissed with leave to file an amended complaint.  Plaintiff has filed an amended complaint.

18           As plaintiff has previously been informed, the court is required to screen

19   complaints brought by prisoners seeking relief against a governmental entity or officer or

20   employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint

21   or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that

22   fail to state a claim upon which relief may be granted, or that seek monetary relief from a

23   defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

24           A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

25   <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989); <u>Franklin v. Murphy</u>, 745 F.2d 1221, 1227-28

26   (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an

1

1   indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

2   490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

3   pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

4   Cir. 1989); Franklin, 745 F.2d at 1227.

5           A complaint must contain more than a "formulaic recitation of the elements of a

6   cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the

7   speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).

8   "The pleading must contain something more...than...a statement of facts that merely creates a

9   suspicion [of] a legally cognizable right of action."  Id., quoting 5 C. Wright & A. Miller, Federal

10  Practice and Procedure 1216, pp. 235-235 (3d ed. 2004).   "[A] complaint must contain sufficient

11  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft

12  v. Iqbal, No. 07-1015, 2009 WL 1361536 at * 12 (May 18, 2009) (quoting Twombly, 550 U.S. at

13  570, 127 S.Ct. 1955).  "A claim has facial plausibility when the plaintiff pleads factual content

14  that allows the court to draw the reasonable inference that the defendant is liable for the

15  misconduct alleged."  Id.

16          In reviewing a complaint under this standard, the court must accept as true the

17  allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S.

18  738, 740, 96 S.Ct. 1848 (1976), construe the pleading in the light most favorable to the plaintiff,

19  and resolve all doubts in the plaintiff's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct.

20  1843 (1969).

21          Although plaintiff has somewhat streamlined his amended filing (62 pages down

22  from the 134-page original complaint), plaintiff fails to cure the substantive defects of the

23  original complaint.  In this incarnation, plaintiff names the following defendants, some of whom

24  remain the same:  Warden T. Virga; Associate Warden T. Lizarraga; Correctional (Corr.)

25  Lieutenants D. Lieber and Conrad; Correctional Counselor A. Johnson; Psychologist

26  Benzendine; Registered Nurse (RN) Chappell; Corr. Officer (C/O) Brown.  Amended Complaint

1  (AC), p. 3.

2          Plaintiff alleges that he was before the Folsom State Prison (FSP) institutional

3  classification committee (ICC) on June 9, 2010, and July 14, 2010, and on both occasions gave

4  notice that he was "very paranoid" about taking a cellmate due to his "extreme fear" of "seriously

5  or fatally harming his cellmate." AC, p. 4.  At the ICC hearing, defendant Virga went so far as to

6  threaten plaintiff with a charge of making "terrorist threats," although plaintiff claims he was

7  giving notice of his "paranoia" as a "good will" gesture in an effort to keep out of trouble.  Id., at

8  5.  Plaintiff claims that defendant Virga "made a very negligent statement" when he said: "'Well,

9  Mr. Taylor, that's your decision.  That's your choice, and you will be the one who answers to

10  that.  In order to go to protective custody/sensitive needs yard, you have to take a cellmate.'"  Id.

11  Plaintiff claims that defendants Virga; Lizarraga; Lieber; and Johnson collaborated to show

12  deliberate indifference to a "life endangering situation," in violation of the Eighth Amendment.

13  Id.

14          Plaintiff states that on May 5th, 2010, prison officials had sent plaintiff to

15  administrative segregation (Ad Seg) for his refusal to be placed with a cellmate, but he interprets

16  that placement as having been done based on plaintiff's "paranoia" about having a cellmate.

17  AC., p. 6.  In order to avoid staying in Ad Seg, plaintiff agreed "under duress" to take a cellmate

18  (apparently at the July 14, 2010 Ad Seg ICC hearing).  Id. & Exhibit 1-C, p. 28.  Thereafter, as

19  plaintiff has previously alleged, on August 1, 2010, he was involved in a serious cellfight with

20  his cellmate, Inmate Miller, CDC # K-61169, during which he claims to have received serious

21  injuries in the form of cuts on his face and his left jaw "looked to be broken"; the doctor who saw

22  him recommended an x-ray of his face.  Id.  After he had a conversation with defendant

23  Benzedine, a psychologist, plaintiff states that defendants Conrad and Benzedine told him he was

24  being sent to a suicide holding cell.  Id. at 7-8.  Plaintiff once again expresses his outrage that his

25  cellmate, who only had a cut to his finger, was being returned to his normal housing unit.  Id. at

26  7.  Plaintiff was very dissatisfied with the explanation that there was no room in Ad Seg and

1  "'you made mention of homicide on your celly.'" Id. at 8.

2       Apparently contradicting the basis for his allegations of how his warnings of his

3  fear of causing harm to potential cellmates were ignored, plaintiff confusingly contends that

4  defendants Benzedine and Conrad "were being spiteful," even though he acknowledges having

5  stated at the time: "I did good by not killing him."  AC, p. 8.  In an effort to calm the plaintiff,

6  who admits to being irate about the perceived injustice to which he was subjected, Benzedine and

7  Conrad assured plaintiff he would only be in the suicide holding cell for one night, after which he

8  would be sent to Ad Seg and thereafter to the general population, and in any event, his medical

9  records were unattainable on Sunday.  Id.  Plaintiff does not contradict their alleged

10  representation, but claims he was being unfairly treated.  Id.

11       Plaintiff claims that on the night he spent in the suicide holding cell, he was

12  unable to wash the blood off his swollen face and his efforts to obtain an ice pack by unnamed

13  C/O's and defendant Nurse Chappell as he sat clothed only in a nylon suicide gown were

14  rebuffed and he was told that nothing could be done for him while he was in that cell.  AC, p. 9.

15  Plaintiff claims he was thereby subjected to deliberate indifference to a serious medical need in

16  violation of the Eighth Amendment.  Id. at 9-10.  Plaintiff claims that his recent medical

17  grievances regarding pain and blurred vision have gone unanswered.  Id. at 10.

18       Plaintiff was released from Ad Seg after the August 1st fight on August 13, 2010,

19  and, on August 16, 2010, plaintiff was again involved in a serious fight with another cellmate.

20  AC, pp. 11-12.  Plaintiff states that he had, before the incident, informed defendant Brown that

21  he and his cellmate were "not getting along," after which defendant Brown told plaintiff "we are

22  not regulars; we're not doing any moves," telling plaintiff to ask the control booth officer in the

23  tower.  Id. at 11.  Plaintiff did so, calling loudly to the control booth officer five or six times, but

24  received no response.  Id.  When plaintiff returned to defendant Brown and unnamed officers to

25  continue to express the urgency of a need for a cell change, Brown and the officers turned it into

26  a laughing matter.  Id.  Plaintiff again recounts that defendant Brown told him there was a vacant

1   cell but that he would not want to go there because the inmate was white.  Id.  When plaintiff

2   said that he did not care where he went as long as he got out of the cell he was in, the officers

3   continued to refuse his request; plaintiff told the officers of whom he knew only Brown's name

4   he was writing them up.  Id.  Two or three hours later, plaintiff caused his cellmate, Inmate

5   Hernandez, CDC # P774484, "very serious injuries" in a fight, resulting in plaintiff's being

6   charged with "'battery on an inmate resulting in serious bodily injury,'" for which plaintiff

7   apparently received two years in Ad Seg.  Id. at 12.  Plaintiff complains of the loss of privileges

8   and other limitations to which he is subjected in Ad Seg housing.  Id. at 12-13.  Plaintiff claims

9   defendant Brown violated his Eighth Amendment rights by being deliberately indifferent to the

10  "imminent danger" of a "life-threatening situation."  Id. at 12.  He contends that he has

11  permanent face scars, blurred vision and a lump beside his right eye.  Id.  He is on medication for

12  headaches, suffers dizzy spells and still has not had his vision examined, and although his face

13  has apparently been x-rayed once, he has not received another x-ray, as non-defendant Dr. Ali

14  had promised.  Id., at 13.  Plaintiff suffers from "grave depression" and mental anguish because

15  prison officials turned a blind eye to his expressions of "paranoia" regarding the "'imminent

16  danger'" posed [by placing him with a cellmate].  Id.  Plaintiff seeks compensatory money

17  damages.  Id. at 17.

18          Although plaintiff was granted leave to amend because he may have had colorable

19  claims, plaintiff continues to fail to frame such claims in his amended complaint.  With regard to

20  his claims that he was wrongly placed with a cellmate, plaintiff has been informed that generally,

21  prison officials' housing and classification decisions do not give rise to federal constitutional

22  claims encompassed by the protection of liberty and property guaranteed by the Fifth and

23  Fourteenth Amendments.  See Board of Regents v. Roth, 408 U.S. 564, 569, 92 S. Ct. 2701

24  (1972).  Nor does the Constitution guarantee a prisoner placement in a particular prison or

25  protect an inmate against being transferred from one institution to another.  Meachum v. Fano,

26  427 U.S. 215, 223-225, 96 S. Ct. 2532, 2538 (1976).

1        Although plaintiff took great umbrage (AC, p. 4) at the court's prior observation

2   that his own allegations regarding cell placement gave the appearance of being highly

3   manipulative,[1] plaintiff does not adequately alter that appearance in his amended complaint.

4   With regard to his claims that defendants have failed to protect him, plaintiff has been previously

5   apprized that "'prison officials have a duty...to protect prisoners from violence at the hands of

6   other prisoners.'" Farmer v. Brennan, 511 U.S. 825, 833, 114 S.Ct. 1970, 1976 (1994).  "[A]

7   prison official violates the Eighth Amendment when two requirements are met.  First, the

8   deprivation alleged must be, objectively, 'sufficiently serious'....  For a claim (like the one here)

9   based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions

10  posing a substantial risk of serious harm." Id. at 834, 114 S.Ct. at 1977.  Second, "[t]o violate

11  the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable

12  state of mind' ... [T]hat state of mind is one of 'deliberate indifference' to inmate health or

13  safety." Id.  The prison official will be liable only if "the official knows of and disregards an

14  excessive risk to inmate health and safety; the official must both be aware of facts from which

15  the inference could be drawn that a substantial risk of serious harm exists, and he must also draw

16  the inference." Id. at 837, 114 S.Ct. at 1979.

17       As the court previously noted, the failure to protect appears to be a claim that

18  might "be raised by plaintiff's unfortunate cellmates, but not very convincingly by plaintiff."[2]

19  There is no basis for a claim of an Eighth Amendment violation against defendants for plaintiff's

20  self-confessed and apparently wholly unwarranted aggression toward his cellmates and, of

21  course, as he has been informed, plaintiff cannot raise claims on behalf of any party other than

22  himself.  Halet v. Wend Inv. Co., 672 F.2d 1305, 1308 (9th Cir. 1982) (party must assert [his]

23

24       [1] "By his own allegations, plaintiff appears to be highly manipulative, alleging he will
    harm or kill a cellmate if not single-celled, but when he does not like placement alone in Ad Seg,
25  attempting to downplay the seriousness of any fight he has gotten into."  Order, filed on Jan. 4,
    2011, p. 8.

26       [2] See Order, filed on Jan. 4, 2011, p. 13.

1    own rights not those of third parties), citing <u>Duke Power Co. v. Carolina Environmental Study</u>

2    <u>Group</u>, 438 U.S. 59, 80, 98 S.Ct. 2620, 2634 (1978); <u>Warth v. Seldin</u>, 422 U.S. 490, 499, 95

3    S.Ct. 2197, 2205 (1974).[3]

4            As to his claims of inadequate medical care, the failure to provide plaintiff with an

5    ice pack for a night simply does not rise to the level of an Eighth Amendment violation.  The

6    standards for raising such a claim were fully set forth in the court's prior order and will not be

7    repeated herein.  See <u>Order</u>, filed on Jan. 4, 2011, pp. 9-11.  To the extent that he is claiming he

8    has to date not received all the medical care he believes he needs, plaintiff does not name as a

9    defendant any individual responsible for such alleged omission.  The court will now recommend

10    dismissal of this action.

11            "Liberality in granting a plaintiff leave to amend 'is subject to the

12    qualification that the amendment not cause undue prejudice to the defendant, is not sought in bad

13    faith, and is not futile.'"  <u>Thornton v. McClatchy Newspapers, Inc.</u>, 261 F.3d 789, 799 (9th Cir.

14    2001), quoting <u>Bowles v. Reade</u>, 198 F.3d 752, 757 (9th Cir. 1999); <u>Lopez v. Smith</u>, 203 F.3d

15    1122, 1124 (9th Cir. 2000) ("[A] district court retains  its discretion over the terms of a dismissal

16    for failure to state a claim, including whether to make the dismissal with or without leave to

17    amend.").  "The district court's discretion to deny leave to amend is particularly broad where

18    plaintiff has previously amended the complaint."  <u>Metzler Inv. GMBH v. Corinthian Colleges,</u>

19    <u>Inc.</u> 540 F.3d 1049, 1072 (9th Cir. 2008), quoting <u>In re Read-Rite Corp.</u>, 335 F.3d 843, 845 (9th

20    Cir. 2003).   In this instance, plaintiff has been given an opportunity to amend his complaint to

21    frame colorable claims and has failed to do so.

22    \\\\\

23

24        [3] If plaintiff's claim was viable, very many prisoners could claim that since they were
violent persons, unable (or more likely unwilling) to curb their violent tendencies, they have to

25    be single celled – thereby profiting from their unlawful conduct.  This transparent manipulation
of the necessary right of prisoners to bring bona fide civil rights cases will not be endorsed by the

26    undersigned.

1    Accordingly, IT IS HEREBY RECOMMENDED that this action be dismissed for

2    failure to state a claim upon which relief may be granted.

3    These findings and recommendations are submitted to the United States District

4    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

5    days after being served with these findings and recommendations, plaintiff may file written

6    objections with the court.  Such a document should be captioned "Objections to Magistrate

7    Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections

8    within the specified time may waive the right to appeal the District Court's order.  Martinez v.

9    Ylst, 951 F.2d 1153 (9th Cir. 1991).

10   DATED: April 28, 2011

                                   /s/ Gregory G. Hollows

11   _____

                                   UNITED STATES MAGISTRATE JUDGE

12   GGH:009
     tayl2731.ord

13

14

15

16

17

18

19

20

21

22

23

24

25

26